SHANNON MCMINIMEE
LARA HRUSKA
Cedar Law PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Tel: 206.607.8277
Email: shannon@cedarlawpllc.com
Email: lara@cedarlawpllc.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIZABETH JACKSON<br><br>                    Plaintiff,<br><br>v.<br><br>PACIFIC NORTHWEST UNIVERSITY OF HEALTH SCIENCES, a Washington public benefit corporation<br><br>                    Defendant. | **NO. 1:19-CV-3219**<br><br>COMPLAINT AND DEMAND FOR TRIAL BY JURY |

Elizabeth Jackson ("Plaintiff"), by and through her attorneys, alleges:

### I.    PARTIES AND JURISDICTION

1.    Plaintiff resides in Yakima, Washington.

2.    Plaintiff is a person with a disability as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. ("Section 504"):    at all

relevant times Plaintiff had a mental or physical impairment that substantially limited the major life activities of learning and concentrating. Plaintiff is a person with a disability as defined by the Washington Law Against Discrimination, Chapter 49.60 Revised Code of Washington ("RCW"): at all relevant times Plaintiff had a sensory, mental or physical abnormality that substantially limited her ability to perform as a student.

3.     Defendant Pacific Northwest University of Health Sciences ("PNUHS") is a private, not-for-profit university that states it "educates and trains health care professionals emphasizing service among rural and medically underserved communities throughout the Northwest including Washington, Oregon, Alaska, Idaho, and Montana." Defendant also refers to itself as Pacific Northwest University ("PNWU").

4.     Defendant is a claimed tax-exempt organization under the Internal Revenue Code § 501 and files Form 990 as a tax return with the IRS.

5.     Defendant was organized as a Washington Public Benefit Corporation on February 16, 2005.

6.     Plaintiff was enrolled as a student at Defendant's College of Osteopathic Medicine in Yakima, Washington.

7.     Defendant is located and does business in Yakima, Washington.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 2

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

8.    Defendant is a place of public accommodation pursuant to 42 U.S.C. § 12181 (7) (J) and RCW 49.60.040(2).

9.    Defendant is a recipient of federal financial assistance.

10.    All acts complained of occurred within the Eastern District of Washington.

11.    The Federal Court for the Eastern District of Washington has personal jurisdiction over the parties and subject matter jurisdiction for the claims in this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

12.    Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b) because the acts and omissions complained of herein occurred in the District and Defendant conducts business in the District.

## II.    FACTS

13.    Plaintiff re-alleges the above paragraphs.

14.    Like traditional medical physicians, osteopathic physicians can prescribe medications, perform surgeries, and practice medicine throughout the United States. Osteopathic physicians focus on health education and prevention to help patients achieve wellness.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 3

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

15.    Like a traditional medical student, a student in an osteopathic medical school completes four years of medical education that includes both classroom and clinical elements, and is followed by residency.

16.    There are only 39 accredited branch campuses of schools of osteopathic medicine in the United States. Consequently, admission to schools of osteopathic medicine is competitive.

17.    Defendant College of Osteopathic Medicine is an accredited school of osteopathic medicine.

18.    Defendant has accepted over $45 million in federal financial assistance conditioned on a promise not to discriminate based on disability.

19.    As a condition of accepting in excess of $45 million in federal financial assistance, Defendant on multiple occasions signed notices of compliance and nondiscrimination with federal agencies, including the United States Department of Education. Each such notice required Defendant to commit, as a condition of receiving those federal funds, not to discriminate based on disability.

20.    Plaintiff pursued an osteopathic medicine career after a successful career in business.

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

21.    In June 2015, Plaintiff began a Postbaccalaureate Master of Arts program in Biomedical Sciences at Virginia College of Osteopathic Medicine. Plaintiff was seven months pregnant at the start of the program.  She was previously diagnosed with Attention Deficient Hyperactivity Disorder ("ADHD"), but could not take medication for ADHD while pregnant.  Her grades suffered due to the lack of ADHD medication, being in late-stage pregnancy, and the absence of assistance from Yakima family members.  Plaintiff is from Yakima and her family still lives there.

22.    After her first semester in the Virginia program, Plaintiff and her husband decided they needed to be closer to family for support with their baby in order for Plaintiff to succeed in her medical education.

23.    Plaintiff applied to the joint Heritage College/PNUHS Master's in Medical Science Program ("MAMS") and was accepted in May 2016.  Plaintiff's husband resigned his job in Virginia and the family relocated to Yakima to facilitate Plaintiff's attendance at MAMS.  Plaintiff incurred $32,000 in student loan debt for MAMS specifically in order to facilitate her admission to Defendant's College of Osteopathic Medicine.  MAMS students were guaranteed an admissions interview at Defendant PNUHS, and 83 percent of MAMS graduates were admitted to the professional school of their choice, according to

COMPLAINT AND DEMAND FOR JURY
TRIAL- 5

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

MAMS Interim Admissions Director. Plaintiff was, in fact, admitted to Defendant PNUHS after successfully completing MAMS.

24. After returning to Yakima, Plaintiff was diagnosed with depression, and her prior ADHD diagnosis was specifically identified as Attention Deficit Hyperactive Disorder, Inattentive Type. Plaintiff has been fully compliant with medications and follows the recommendations of her physician for treatment of both conditions.

25. Plaintiff was provided with accommodation for her ADHD disability at MAMS, specifically time-and-a-half on exams. There were no graded quizzes or laboratory exams at MAMS, so no accommodation was needed for those.

26. In the spring of 2017, Plaintiff applied for admission to Defendant's College of Osteopathic Medicine. Plaintiff's score on the Medical College Admission Test ("MCAT") was 501 -- at the 56th percentile among all who took the test. The average MCAT score for Defendant's current entering class is 501.89, very close to Plaintiff's score. Plaintiff is informed and believes that for her entering class, the average MCAT score was similarly between 501 and 502.

27. During the admission process, Plaintiff met with the University, and explained that she was a student with a disability. The Defendant stated this would

COMPLAINT AND DEMAND FOR JURY
TRIAL- 6

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

not impede her medical education and told her to request accommodation under Defendant's procedures.

28.    Plaintiff was admitted to Defendant's College of Osteopathic Medicine and began her studies in the fall of 2017.

29.    During her first week of orientation, Plaintiff completed Defendant's accommodation request form and provided documentation of her disability to Defendant's Student Affairs Office.  Plaintiff's compliance with the procedures for verifying her status as a student with a disability and her need for accommodation have never been questioned.

30.    At all times relevant to this Complaint, Defendant did not have a Section 504 coordinator.  Defendant acknowledged this in a later investigation by the Office for Civil Rights of the United States Department of Education ("OCR").  At all times relevant to this Complaint, Defendant had one Learning Skills Specialist.  The Learning Skills Specialist's position was within Defendant's Student Affairs Office.  The Learning Skills Specialist's role was to assist all students who wanted help with learning skills, whether they were disabled or non-disabled.  Her many responsibilities were described in Defendant's Student Handbook for 2017-2018 ("Student Handbook"):

> Academic skill development is available for any student who would like help improving study strategies or test-taking skills.  Assistance is available

COMPLAINT AND DEMAND FOR JURY
TRIAL- 7

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

in several areas including: identification of learning preferences, becoming active learners, note-taking, memorization techniques, using resource materials, studying for tests, reducing test anxiety, effectively using a tutor, and studying in small groups. The learning skills specialist will oversee delivery of many of these services, which may be provided by the learning skills specialist, faculty, or students. . . . The learning skills specialist coordinates a formal tutoring and recitation program. . . . Students may contact the learning skills specialist to apply for tutoring services.

The Student Handbook also stated that the Learning Skills Specialist was responsible for selecting a faculty advisor for each student in the medical school.

31. On August 15, 2017, Plaintiff submitted Defendant's Reasonable Accommodation Request Form. She requested time-and-a-half on "tests." (Plaintiff also requested to use over-the-ear headphones and additional scratch paper, both of which are allowed to all students.)

32. Defendant does not use the word "tests" in its curriculum. It uses the word "assessments." It administers three main types of assessment in the first two years: written exams, laboratory exams, and written quizzes. Plaintiff had experienced none of these assessments at the time she submitted her accommodation request on the second day of classes. Defendant acknowledged to OCR that "tests" is an ambiguous term. Defendant told OCR that if the Accommodations Committee is not clear on what a student is requesting as an

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

accommodation, the committee will seek clarification.  The Defendant did not seek clarification from Plaintiff regarding what she meant by "tests."

33.    On August 25, 2017, Defendant notified Plaintiff by letter that her request for time-and-a-half on "tests" would be limited to "exams (not quizzes)." The letter gave no reason for this restriction.  Nor did the letter state that "exams" were limited to written exams, and excluded laboratory exams.  Defendant subsequently failed to comply with its own accommodation letter by denying Plaintiff time-and-a-half on laboratory exams.

34.    In Defendant's first-year Anatomy course,[1] laboratory exams were worth almost 28 percent of the grade (260 points out of 944).  These were not informal reviews.  They were formal assessments scheduled for specific dates to cover specified material in the curriculum, as detailed in the course syllabus. Laboratory exams involve identifying the parts of the body that are tagged on dissected cadavers and writing down the answer.  Students have one minute per question.

---

1  The first-year Anatomy course is divided into two semesters.  When the term "first-year Anatomy" is used herein, it refers to both semesters together.  When individual semesters of this course are discussed, they are referred to as either "first-semester Anatomy" or "second-semester Anatomy."

COMPLAINT AND DEMAND FOR JURY
TRIAL- 9

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

35.     Defendant argued to OCR that its practice of not allowing additional time on laboratory exams was "in concert with" the National Board of Osteopathic Medical Examiners (NBOME) practice of not allowing additional time on Clinical Skills Evaluations in the national boards.  Defendant's laboratory exams could not be more different from NBOME's Clinical Skills Evaluations.  NBOME describes its Clinical Skills Evaluation, and why additional time is not allowed as a disability accommodation, as follows:

> The 14-minute timeframe to assess the candidate's ability to perform clinical skills in a "timely, efficient, safe and effective" manner is appropriate and necessary *to assess the candidate's competency in a real-life situation and to be consistent with clinical encounters in an outpatient setting, which may concern a patient in a time-sensitive, life threatening situation.*  Thus, NBOME does not grant any extended time for the standardized patient (SP) portion of the examination, as that would fundamentally alter what that portion of the Level 2-PE examination was intended to assess or measure.

https://www.nbome.org/Content/Exams/COMLEX-USA/COMLEX-USA_Test_Accommodation_Instructions.pdf (italics added).

36.     Plaintiff never needed additional time to evaluate patients in real-life situations when she worked as a certified Emergency Medical Technician.  Plaintiff also never requested or needed additional time on Defendant's Clinical Skills exams which, like NBOME's Clinical Skills Evaluation, involve the *physical examination of patients*.  Plaintiff received a grade of 85 percent in

COMPLAINT AND DEMAND FOR JURY TRIAL- 10

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

Defendant's Clinical Skills course. Defendant's laboratory exams are completely unrelated to the NBOME Clinical Skills Evaluation.

37.     In Defendant's first-year Anatomy course, quizzes were worth almost 12 percent of the grade (110 points out of 944). These were not informal or pop quizzes. They were formal written assessments scheduled for specific dates to cover specified material in the curriculum, as detailed in the course syllabus. Yet Defendant, on two occasions, told OCR that quizzes are "low stakes," so no accommodation of additional time is needed for anyone.

38.     In total, Plaintiff was denied the accommodation of additional time on 39 percent of the assessments (quizzes plus laboratory exams) that determined her grades in first-year Anatomy.

39.     Defendant's August 25, 2017 accommodation letter failed to notify Plaintiff of any grievance procedure Plaintiff could use if she disagreed with the decision on her disability accommodation request. The letter simply told her to contact Student Affairs – the same office that issued the letter -- if she believed the accommodations were ineffective.

40.     No interactive process to determine reasonable accommodations was ever proposed or disclosed to Plaintiff during her multiple conversations with Defendant about her accommodation issues and academic challenges. No

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

communication ever referenced a grievance or appeal process for the denial of accommodations. Plaintiff was not informed that there were other medical schools that provided time-and-a-half on quizzes and/or laboratory exams to students with disabilities similar to her own (the very accommodations that Defendant denied to Plaintiff).

41. The only grievance procedure mentioned in Defendant's Student Handbook or Student Catalogue for 2017-2018 is a grievance for someone being "wrongly treated" by an individual faculty member, staff member, or student. Defendant told OCR that it did not know whether it had a procedure compliant with Section 504 for students to file a complaint of disability discrimination for denial of reasonable accommodation.

42. A written exam in first-semester Anatomy was scheduled for October 2, 2017. That morning Plaintiff woke to news of the Las Vegas mass shooting that killed 58 people and injured over 800 people at the Mandalay Bay Casino the previous night. Plaintiff had lived in Las Vegas from 2007 to 2011 and worked for the company that managed nightlife for the MGM Mirage group, which included the Mandalay Bay Casino. At the time of the shooting Plaintiff had several friends working at the Mandalay Bay Casino and she did not know if they

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

had lived or died.[2]  Plaintiff spoke with Defendant, saying she did not know how she could sit for the Anatomy exam that day.  Defendant told her she had to compartmentalize her feelings and must take the exam.  Plaintiff took the exam and failed it.  Defendant disregarded the process of applying for an excused absence when it issued its oral denial.  Defendant's Student Handbook provides a written process for requesting an excused absence, a process overseen by Defendant's Student Affairs Office:

> Students must submit a request to Student Affairs for any absence they wish to have excused.  Students must maintain prior approval for absences.  Requests will be handled on a case-by-case basis.  Once approved, Student Affairs will notify the appropriate staff and faculty.  Once a formal notification has been sent out, it is the responsibility of the student to work with the course director(s) and assessment coordinators to schedule any make-up exams, quizzes, course work, etc.

The Student Handbook also provides a process for requesting an excused absence after-the-fact in emergent situations.  Therefore, the shortness of time on the

---

2  This was not mere speculation on Plaintiff's part.  In fact, four of Plaintiff's former co-workers were present at the mass shooting.  One was with a group of four people, all of whom were shot except for her.  Another flipped over metal tables and pulled people behind the tables to protect them along with himself.

COMPLAINT AND DEMAND FOR JURY TRIAL- 13

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

morning of October 2, 2017 did not allow Defendant to ignore Defendant's procedures and issue an oral denial.

43.    In a meeting with Defendant in late September or early October 2017, Plaintiff asked why she did not receive the disability accommodation of time-and-a-half on quizzes or laboratory exams.   An agent of the University waved her hand and simply stated: "They don't do that."  Plaintiff made the same inquiry of her advisor, another agent of the University, shortly thereafter.  Plaintiff was again told "We don't do that."  In a subsequent meeting with Defendant in late-January or February 2018, Plaintiff asked Defendant about its "They don't do that" comment and was again denied time-and-a-half on quizzes and laboratory exams.

44.    In a July 10, 2018 letter to OCR, Defendant acknowledged that its practice is not to allow the disability accommodation of additional time on laboratory exams.   Likewise, on September 6, 2018, Defendant told OCR that three years earlier Defendant had decided not to allow the disability accommodation of additional time on quizzes.

45.    Curiously, Defendant, on three separate occasions, told OCR that it was Plaintiff's responsibility, after receiving an explicit written denial of additional time on quizzes, to submit another request for exactly this

COMPLAINT AND DEMAND FOR JURY TRIAL- 14

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

accommodation. The assertion was especially curious in light of Defendant's admitted practice of not allowing this accommodation.

46.     On February 21, 2018, Plaintiff submitted another request for accommodation, this time specifically concerning laboratory exams. Because time-and-a-half had already been denied to her on laboratory exams and quizzes, Plaintiff asked for something that might be granted: a five-minute period prior to laboratory exams during which she could write down terms that would be used in the exam, and use the list during the exam to speed her recall. By letter dated March 16, 2018, the request was granted. However, it applied to only one laboratory exam before Plaintiff was dismissed. Defendant alleges Plaintiff

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

arrived late to the five-minute period. This is untrue.[3]  Defendant told OCR that the five-minute period was allowed despite it not being in her accommodation plan.  This was also untrue.

47.     On Friday, December 15, 2017, Plaintiff was scheduled to take the final exam in her Musculoskeletal Systems course, and then make up two

_____

3  Plaintiff had been instructed to go to a professor's room, who would proctor the five-minute accommodation period. Plaintiff arrived on time, but the professor was proctoring a group of students taking the same exam Plaintiff was about to take. Examinations are conducted under very strict conditions at Defendant PNUHS, as detailed in the Student Handbook.  Plaintiff was very reluctant to disturb testing by knocking on the door or entering.  Defendant's Test-Taking Protocol states that testing must take place in quiet and no talking is allowed.  Entering the room without knocking would be a cheating offense because Plaintiff was about to take the same exam.  After waiting a few minutes without instructions, and unable to gain the professor's attention, Plaintiff finally knocked quietly.  The professor took Plaintiff to another room where Plaintiff had the full five-minute time period she was allowed.  However, the professor stood over Plaintiff's shoulder for the last few minutes, repeatedly asking her assistant how much time remained, distracting Plaintiff and making her unable to benefit from the accommodation.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 16

Musculoskeletal quizzes that were missed because of excused absences. After the final exam was complete, Plaintiff's family notified her that her grandfather had died. Plaintiff had named her child after this grandfather. Plaintiff was grieving and making arrangements to drive to North Dakota for the funeral. She requested to delay the two quizzes until after Christmas. This request was denied. She was required to take the quizzes before departing for the funeral. Defendant's denial violated its Student Handbook, which provides that emergent excused absences are allowed for reasons including "death of a family member." Family member is not defined in the Student Handbook.

48.     Plaintiff failed first-semester Anatomy as result of Defendant's wrongful conduct. She was brought before the Student Progress Committee and told that if she failed another course, she would be dismissed from Defendant PNUHS. Plaintiff then attempted to engage in discussions regarding her disability and lack of accommodation, but was told that the Student Progress Committee was not the place for those issues.

49.     Cardiovascular System is a nine-week course offered at the beginning of second semester (the full semester is 15 weeks). During Plaintiff's Cardiovascular System course, one of her fellow students experienced a seizure during a four-hour exam on February 8, 2018 ("Cardio Exam 2"). Because

COMPLAINT AND DEMAND FOR JURY
TRIAL- 17

Plaintiff is a certified Emergency Medical Technician, she immediately went to the aid of the student having the seizure until additional help arrived. This not only resulted in a break in concentration for Plaintiff, but resulted in the exam lasting almost seven hours instead of the scheduled four hours. Plaintiff's ADHD medication expired during that time. Plaintiff had difficulty finishing the test without her required medication. She failed the exam. Also, her ADHD medication dosage was 30 percent too low at the time. Her physician corrected the dosage a few weeks later, on February 22, 2018.[4]

50.    Plaintiff requested to re-take Cardio Exam 2 due to all of these circumstances. On March 21, 2018, Defendant told Plaintiff that exam retakes are not offered. Defendant told OCR that Plaintiff was to blame for the situation: she had not brought extra medication with her to the exam (which lasted almost seven hours instead of the scheduled four), and that Defendant was not responsible for assisting her medical oversight.

---

4  The fact that Plaintiff's medication dosage was incorrect is not the fault of Defendant and does not raise an accommodation issue. Rather, it is a "mitigating circumstance" that Plaintiff was prevented from presenting when she appealed her dismissal. This violated Defendant's Student Handbook, as discussed in paragraph 59, below.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 18

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

51.     Plaintiff failed the Cardiovascular System course. In an attempt to prove she would have failed the course regardless of the emergency interruption during Cardio Exam 2, Defendant calculated what Plaintiff's overall course grade would be if Cardio Exam 2 were removed from the picture.  It calculated that Plaintiff would have failed the course by 9 points out of a possible 500 points. However, removing Cardio Exam 2 from the picture denied Plaintiff the opportunity to *raise* her overall grade by doing well on that exam. Indeed, Plaintiff subsequently did better on Cardio Exam 3, passed the exam, and raised her grade in the course as a result.  She was denied the opportunity to do this on Cardio Exam 2.  She was also denied accommodation on all quizzes in that course.  (There were no laboratory exams in the Cardiovascular course.)

52.     Defendant dismissed Plaintiff for having failed two courses: first-semester Anatomy and second-semester Cardiovascular System.[5] In first-semester Anatomy, Plaintiff was unaccommodated for 45 percent of the grade (187 out of

_____

5  Cardiovascular System is only offered during second semester.  To assist the reader in understanding the chronology of events, this course is referred to herein as "second-semester Cardiovascular System."  However, there is no first-semester Cardiovascular System course.

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

420 points), consisting of lecture quizzes, laboratory quizzes, and laboratory exams. Plaintiff fell only 2.9 percent short of passing (12 out of 420 points) despite being unaccommodated for 45 percent of the grade.

53.    In second-semester Cardiovascular System, Plaintiff was unaccommodated for 45 percent of the grade (227 out of 500 points). This consisted of quizzes and the denial of accommodation for the exam in which another student had a seizure. Plaintiff fell only 3.6 percent short of passing (18 out of 500 points) despite being unaccommodated for 45 percent of the grade. Had Plaintiff not been dismissed partway through the second semester (when Cardiovascular System ended), she was in danger of failing another class. That class was second-semester Anatomy, in which she was unaccommodated for 46 percent of the grade (242 out of 524 points).

54.    By contrast, in the two classes where unaccommodated points formed the *lowest* proportion of her grade, Plaintiff earned high marks: In Art and Practice of Doctoring, only 9 percent of the grade (30 out of 321 points) was unaccommodated. Plaintiff earned an 87 percent grade in that course. In Clinical Skills I, only 12 percent of the grade was unaccommodated (120 out of 1000 points). Plaintiff earned an 85 percent grade in that course.

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

55.     Defendant's Student Catalogue provides the right to meet with the Student Progress Committee prior to a dismissal for poor academic performance. That right was denied to Plaintiff. The Student Catalogue states:

> The student will have the opportunity to present to the [Student Progress] committee any mitigating circumstances which directly contributed to the poor academic performance. The student must appear in person to make a personal statement and answer any questions by the committee. The Student Progress Committee will make a recommendation to the appropriate associate dean who will notify the student of the final decision.

56.     When Plaintiff learned she had failed her second course that year, she wrote to Defendant on March 21, 2018, stating she would meet with the Student Progress Committee and would appeal any dismissal. During a subsequent meeting with Defendant, Defendant confirmed that Plaintiff would need to first appeal to the Student Progress Committee, and with their ruling proceed to an appeal with the University.

57.     However, on April 3, 2018, Plaintiff received a letter dated March 26, 2018, dismissing her from Defendant PNUHS under its policy of dismissing students who fail two courses in an academic year. The letter stated the Student Progress Committee *had already made its recommendation*, and she could now appeal the decision.

58.     Plaintiff filed an appeal on April 5, 2018, citing *inter alia* the circumstances of Cardio Exam 2 (where Plaintiff's ADHD medication expired

COMPLAINT AND DEMAND FOR JURY
TRIAL- 21

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

when a four-hour exam lasted for almost seven hours) and the fact that her medication had been too low by approximately 30 percent throughout her studies until February 22, 2018 (after the Cardiovascular System course ended).  On April 13, 2018, Plaintiff had an appeal meeting with Defendant. At that meeting, she offered a letter from her physician documenting the medication change. The physician's letter stated the change had resulted in significantly improved concentration for Plaintiff.

59.    Defendant refused to consider the physician's letter, in violation of the Student Handbook, which gives student the right to present "mitigating circumstances" on appeal of a dismissal for poor academic performance. Defendant fundamentally misunderstood the part of Plaintiff's appeal concerning the 30 percent incorrect dose.  It was a "mitigating circumstance" that she had the right to present.  It was not an after-the-fact accommodation request, as Defendant asserts.[6]

60.    Plaintiff was informed that she could continue to attend classes pending Defendant's decision on her appeal, and she did so.  On April 17, 2018,

---

6 Defendant's July 10, 2018 letter to OCR stated that Defendant "was not made aware of this [30% underdosage] until after the exam.  University, of course, cannot provide accommodations that it does not know are desired."

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

when Plaintiff arrived at school to study for a quiz, one of her classmates shared with her a list serve email indicating Plaintiff had "withdrawn" from the program.

61.     Plaintiff subsequently learned that Defendant had denied her appeal of the dismissal.

62.     At all relevant times, Plaintiff was a person with a disability who was otherwise qualified to meet the requirements of Defendant's medical school program in spite of her disability. Defendant discriminated against Plaintiff solely because of her disability by failing to provide her reasonable accommodations and by dismissing her. Defendant acted with deliberate indifference in discriminating against Plaintiff. Defendant's deliberate indifference is evidenced in part by the fact that this Court previously ordered Defendant to re-enroll another medical student to whom Defendant had denied reasonable accommodation. *See Featherstone v. Pacific Northwest University of Health Sciences,* No. 1:CV-14-3084, 2014 WL 3640803, 2014 U.S. Dist. LEXIS 102713 (E.D. Wash. July 22, 2014).

63.     Unlike Plaintiff, another student with a disability at Defendant PNUHS was allowed to re-try the first-year curriculum three times. He was a classmate of Plaintiff's during his third attempt. His third attempt was successful. Plaintiff is informed and believes that this student's first attempt was with the

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

entering class of 2019, his second attempt was with the entering class of 2020, and his third attempt was with Plaintiff's entering class of 2021. Plaintiff is further informed and believes that after one of the failed attempts, this student informally appealed his dismissal to a high ranking University official and Defendant agreed to reinstate the student in lieu of dismissal. Plaintiff is further informed and believes that Defendant discounted this student's tuition by one-half for his repeated attempts at the first-year curriculum. Plaintiff was given none of these opportunities.

64.    As a result of Defendant's unlawful conduct described herein, Plaintiff suffered damages including, but not limited to, loss of tuition money, incursion of student loan debt, loss of income, and emotional distress.

65.    Plaintiff sought readmission after her dismissal without success. She has now been forced to move forward to pursue other career options. Consequently, readmission has ceased to be a viable remedy for Plaintiff.

66.    On May 5, 2018, Plaintiff filed a complaint with OCR alleging that Defendant discriminated against her on the basis of disability by: (1) Failing to provide a requested accommodation of additional time on quizzes and laboratory exams during the 2017-2018 academic year; and (2) Failing to establish a prompt

COMPLAINT AND DEMAND FOR JURY
TRIAL- 24

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

and equitable grievance process to resolve disability discrimination complaints. Plaintiff at that time sought reinstatement.

67.    As a result of OCR's investigation, Defendant entered into a Voluntary Resolution Agreement with OCR in December 2018.  The Voluntary Resolution Agreement required Defendant to, *inter alia*: (1) Revise its policies and practices regarding the provision of academic adjustments and auxiliary aids and services for students with disabilities, including: providing an interactive process to determine such adjustments and aids; providing students with its reasons for denying any of the same; and referring students to a grievance procedure if they have a grievance regarding the same.  (2) Adopt a modified grievance procedure that incorporates appropriate Section 504 due process standards.  (3) Provide additional training to staff in its Student Affairs Office regarding the revised procedures and grievance process. (4) Reimburse Plaintiff her second semester tuition of $26,500.  Plaintiff was informed by OCR that this was all OCR could obtain from Defendant in the voluntary resolution process, and that OCR's primary goal is to ensure future compliance with the law.

## III.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Americans with Disabilities Act, Title III
### 42 U.S.C. § 12181 *et seq.*

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

68.     Plaintiffs re-alleges the above paragraphs.

69.     Plaintiff is an individual with a disability.  Plaintiff's disability substantially limits the major life activities of learning and concentrating. Accordingly, Plaintiff is an individual with a disability under the Americans with Disabilities Act ("ADA").  *See* 42 U.S.C. § 12102.

70.     Plaintiff was qualified to remain a student at Defendant PNUHS.  She was able to meet the essential requirements to remain a student at Defendant PNUHS with or without reasonable accommodation.

71.     Defendant discriminated against Plaintiff solely based on her disability in violation of the ADA Title III by, *inter alia*: failing to engage in an interactive process to determine what accommodations Plaintiff required; failing to provide a grievance procedure for the denial of accommodations; and dismissing Plaintiff from its medical school.

72.     At all relevant times, Defendant has been a place of public accommodation as defined under the ADA Title III, 42 U.S.C. § 12181(7)(J).

73.     As a direct and proximate cause of Defendant's discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

# SECOND CAUSE OF ACTION

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

### Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 701 *et seq.*

74.     Plaintiffs re-alleges the above paragraphs.

75.     Plaintiff is an individual with a disability.  Plaintiff is substantially limited in the major life activities of learning and concentrating.  Accordingly, she is an individual with a disability as defined under Section 504, 29 U.S.C. § 705(9)(B).

76.     Defendant discriminated against Plaintiff solely based on her disability in violation of Section 504, 29 U. S. C. § 794(a), by *inter alia*: failing to engage in an interactive process to determine what accommodations Plaintiff required; failing to provide a grievance procedure for the denial of accommodations; and dismissing Plaintiff from its medical school.

77.     Defendant acted with deliberate indifference in discriminating against Plaintiff based on her disability.

78.     At all relevant times, Defendant has been a recipient of federal financial assistance within the meaning of 29 U.S.C. §794(b)(2)(A), by virtue of its participation in federal programs and receipt of federal financial assistance including, but not limited to, the federal student loan program.

79.     Defendant knew that as a condition of receiving federal financial assistance it promised not to discriminate based on disability.

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

80.    As a direct and proximate cause of Defendant's discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Washington Law Against Discrimination
### Chapter 49.60 RCW

81.    Plaintiffs re-alleges the above paragraphs.

82.    Plaintiff is an individual with a disability as defined by the Washington Law Against Discrimination ("WLAD").

83.    Defendant is an educational institution, and therefore is a place of public accommodation as defined by the WLAD.

84.    Plaintiff placed Defendant on notice of her need for reasonable accommodation.

85.    Defendant discriminated against Plaintiff on the basis of her disability by failing to provide her with reasonable accommodations and by dismissing her.

86.    As a direct and proximate cause of Defendant's discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### Breach of Contract

87.    Plaintiff re-alleges the above paragraphs.

COMPLAINT AND DEMAND FOR JURY TRIAL- 28

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

88.    Plaintiff's relationship with Defendant was contractual in nature. Defendant's Student Handbook, Student Catalogue, and its other publications set forth the specific terms of the contractual duties it owed to Plaintiff.  *See Marquez v. University of Washington*, 32 Wash. App. 302, 305, 648 P.2d 94, 96 (1982).

89.    By acts and failures to act alleged herein and to be proven at trial, Defendant breached its contractual duties to Plaintiff.

90.    As a direct and proximate cause of Defendant's breaches of contract, Plaintiff has suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Common Law Covenant of Good Faith and Fair Dealing

91.    Plaintiff incorporates the above paragraphs.

92.    Under Washington law, there is an implied covenant of good faith and fair dealing in every contract, so that each party may obtain the full benefit of performance of the contract.  In particular, the duty of good faith and fair dealing arises when the contract gives one party discretionary authority to determine the contract terms.  *See Rekhter v. Dept. of Social & Health Services*, 180 Wn.2d 102, 112-113, 323 P.3d 1036, 1041 (2014).

93.    By acts and failures to act alleged herein and to be proven at trial, Defendant failed to perform its contract with Plaintiff in good faith and with fair dealing.

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

94.    As a direct and proximate cause of Defendant's breach of the common law covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Washington Consumer Protection Act
### Chapter 19.86 RCW

95.    Plaintiff incorporates the above paragraphs.

96.    By obtaining Plaintiff's tuition money and engaging in the acts and failures to act alleged herein and to be proven at trial, Defendant engaged in unfair or deceptive acts or practices in trade or commerce.

97.    Defendant's conduct impacts the public interest because there is substantial potential for repetition of such conduct with other students.

98.    As a direct and proximate cause of Defendant's violation of the Consumer Protection Act, Plaintiff suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment

99.    Plaintiff incorporates the above paragraphs.

100.    Defendant received Plaintiff's tuition money and other benefits at Plaintiff's expense.

COMPLAINT AND DEMAND FOR JURY TRIAL- 30

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

101.   It is unjust for Defendant to retain those benefits because Defendant unlawfully dismissed Plaintiff from its medical school.

102.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff has suffered damages in an amount to be proven at trial.

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment against the Defendants for the following:

1. For such special damages as shall be established at trial;

2. For such general damages as shall be established at trial;

3. For treble damages under the Washington Consumer Protection Act;

4. For such attorneys' fees, interest, costs, and such other relief as allowed by law; and

5. For such other and further relief as the Court deems just and equitable.

## V. DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38 and Local Civil Rule for the Eastern District of Washington 38, Plaintiff respectfully demands a trial by jury.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 31

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101

1

Respectfully submitted this <u>17</u> day of <u>September</u> 2019.

2

3

4

5

6

7

SHANNON MCMIMINEE, WSBA #34471

8

LARA HRUSKA, WSBA #46531
Cedar Law PLLC

9

1001 Fourth Avenue, Suite 4400

10

Seattle, WA 98154
Tel: (206) 607-8277

11

Fax: (206) 607-8277

12

Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT AND DEMAND FOR JURY
TRIAL- 32

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
Tel 206.607.8277 • Fax 206.237.9101